**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **KIMBERLEY RILEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.  1:25-cv-08892** |
| | ) | |
| **vs.** | ) | |
| | ) | **JURY DEMAND** |
| **ILLINOIS DEPARTMENT OF HUMAN** | ) | |
| **SERVICES d/b/a CHICAGO-READ MENTAL** | ) | |
| **HEALTH CENTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>COMPLAINT</u>**

Plaintiff Kimberley Riley ("Plaintiff"), by and through her attorneys, the Law Offices of Michael T. Smith & Associates, P.C., in complaining of Defendant Illinois Department of Human Services d/b/a Chicago-Read Mental Health Center ("Defendant"), states as follows:

**<u>NATURE OF CASE</u>**

1.      Plaintiff brings this action against Defendant under the Americans with Disabilities Act, 42 U.S.C. 12101 *et seq.* ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.* ("Title VII"), for discriminating against her on the basis of her disabilities and race.

**<u>JURISDICTION AND VENUE</u>**

2.      Jurisdiction of this action is conferred upon the Court by 28 U.S.C. § 1331.

3.      Venue for this action is proper in the United States District Court for the Northern District of Illinois under 28 U.S.C. § 1391(b)(1)-(2) and (d) because the employment practices hereafter alleged to be unlawful were committed in the Northern District of Illinois, and because

Defendant's contacts are sufficient to subject it to personal jurisdiction in that district.

4. Plaintiff filed a charge against Defendant with the Equal Employment Opportunity Commission ("EEOC") ("Exhibit A") and thereafter was sent a Notice of Right to Sue ("Exhibit B").

5. Plaintiff timely filed her initial Complaint with the United States District Court for the Northern District of Illinois within 90 days of her receipt of the Notice of Right to Sue.

### PARTIES

6. Plaintiff is an adult, White, disabled individual and is a resident of Chicago, Illinois.

7. At all times relevant to the allegations herein, Defendant was an agency and body politic organized under the laws of the State of Illinois doing business as the Department of Human Services.

8. At all times relevant to the allegations herein, Defendant was an "employer" as that term is defined under Title VII and the ADA.

9. At all times relevant to the allegations herein, Plaintiff was an "employee" of Defendant as that term is defined under Title VII and the ADA.

### FACTUAL ALLEGATIONS

10. Plaintiff began employment for Defendant on or around February 10, 2014, with her most recent position being Registered Nurse II.

11. At all times relevant, Plaintiff was qualified to perform the essential functions of her position with Defendant with/without an accommodation.

12. At all times relevant, Plaintiff met or exceeded Defendant's legitimate work performance expectations when said expectations were applied consistently without regard to

2

disability or race.

13.     Plaintiff has been diagnosed with Type II Diabetes, which substantially affects her in numerous daily life activities including but not limited to eating and the major bodily function of the endocrine system. Plaintiff's disability causes her to experience numerous health related issues such as diabetic retinopathy, peripheral neuropathy, unsteady gait, intractable pain of the bilateral extremities, and balance issues.

14.     At all times relevant to Plaintiff's claims, Defendant was aware of Plaintiff's disabilities.

15.     In June of 2023, Defendant arbitrarily relocated the attendance sign in sheets required to process payroll from stations located in the individual units that units were working out of to a remote office location that required walking the equivalent of two miles round trip to sign in and out for each shift.

16.     Plaintiff promptly notified Defendant that walking two miles, two times per day, would create a physical hardship for her and she requested, as a disability accommodation, that she be permitted to sign in at one of several alternative locations that she suggested.  This accommodation request was denied.

17.     Not only was Plaintiff's requested accommodation denied, but she also later discovered that Defendant management viewed her inability to walk two miles to sign the attendance sheets as an act of insubordination.

18.     Plaintiff subsequently received a threatening phone call from one of Defendant's managers, Reginald Wilson (Black, non-disabled to Plaintiff's knowledge), advising Plaintiff that if she did not walk to the predesignated location to sign in, then she would not be paid. Mr. Wilson told Plaintiff that her failure to sign in would be considered an "unauthorized absence,"

without monetary compensation, even if she was known to be working on location.

19. In response to the threats by Mr. Wilson that Plaintiff would be denied pay, even if she was working, as a result of being denied a reasonable accommodation, Plaintiff contacted the Illinois Nurses Association and participated in a telephone conference meeting with both union leaders and management. Plaintiff was then referred to the Bureau of Accessibility and Job Accommodation ("BAJA") to pursue an accommodation request.

20. BAJA provided Plaintiff with a physicians statement form for her doctor fill out in order to validate her need for an accommodation. Plaintiff had her physician fill out the form and it was returned to Defendant.

21. Despite the fact that Plaintiff was assured by those who attended the meeting that she would not be denied pay if she worked her scheduled shifts, Mr. Wilson did as promised and inappropriately recorded Plaintiff as having "unauthorized absences" for the days that she did not sign in at the predesignated area and Plaintiff was not paid for time she was working for Defendant.

22. This created an undue financial hardship for Plaintiff and she continued to be admonished by Defendant for "failing to follow policy."

23. Eventually, BAJA implemented a procedure with management that allowed Plaintiff to sign in for her shift at the front security desk upon entering and leaving the building that she worked out of. Although significantly delayed, Defendant eventually paid Plaintiff for the for the shifts she previously worked but was not paid for.

24. In February of 2024, Plaintiff was hospitalized due to complications related to her diabetes. Reginald Wilson was assigned as Plaintiff's interim unit manager at the time and was therefore responsible for processing payroll.

4

25. When Plaintiff returned to work, she was disappointed to learn that Mr. Wilson designated Plaintiff as having "unauthorized absences," citing her for "failure to follow policy" for not turning in a state form 4140 that accounts for specific dates of absence.

26. Plaintiff explained to Mr. Wilson that she had been in the hospital and was, therefore, not present or available to fill out 4140 forms, assuming he would ensure that she was paid in accordance with her available benefit time under the circumstances.

27. In response, Mr. Wilson was hostile and aggressive towards Plaintiff and insisted that it was not his responsibility to complete 4140 forms on her behalf. This, however, was not the situation as Mr. Wilson had filled out 4140 forms on behalf of similarly situated White, non-disabled employees to ensure that they received any available benefit pay. Plaintiff was, once again, financially penalized for having a disability.

28. Beginning in April of 2024, Mr. Wilson began taking it upon himself to start what he called "pop-ins" on the 11:00pm to 7:00am shift. Even though Mr. Wilson was the Acting Clinical Nurse Manager on Unit A South, which was not Plaintiff's unit, he began visiting several other units with what appeared to be a particular interest in Plaintiff's unit, J West.

29. Apparently, Mr. Wilson did this to enable him to "catch" staff either sleeping or using their phones inappropriately during scheduled work hours. Both rule violations, per Defendant's policy, were to be met with a 15-day suspension without pay. Mr. Wilson reportedly came to Plaintiff's unit on several occasions, however, she was not there on those occasions.

30. Mr. Wilson recounted these visits in writing, submitting emails to administration and identifying individuals who "appeared" to be sleeping. After Mr. Wilson submitted these emails, at least one of the individuals who was alleged to be sleeping during working hours, a

5

non-disabled Black male, reportedly admitted to his manager that he was, in fact, sleeping. This individual, however, was not disciplined in any way by Mr. Wilson, nor were any of the other similarly situated non-disabled, non-White coworkers Plaintiff is aware of who had been caught sleeping, or were suspected of sleeping, while on the clock.

31. Other of Plaintiff's similarly situated non-White, non-disabled coworkers were also found around this time to be inappropriately using their cell phones while on duty. Again, Mr. Wilson did not discipline these individuals.

32. In or around January 2025, Plaintiff was diagnosed with severe, non-proliferative diabetic retinopathy, and began treatment with intravitreal injections. This condition greatly compromised Plaintiff's vision. Plaintiff's subsequent partial loss of vision and intolerance to light frequently caused her migraine headaches. Plaintiff was advised by her physicians to lay down if dizzy at the onset of a migraine and seek to eliminate ambient light and sound as needed.

33. On or about April 14, 2025, Mr. Wilson did a "pop in" on Plaintiff's unit while she was on an unpaid break, during which time she was effectively "off the clock" and off duty.

34. On or about April 14, 2025, as Plaintiff was preparing to leave the nursing station, she informed both Mental Health Technician Sharlese Harris and Registered Nurse I Maria Sumitra, "I'm a diabetic, and I'm not feeling well. I feel dizzy right now, and I have a bad headache. I'm going to go lay down in the restraint room. If you need me, come get me, and I'll come out."

35. Plaintiff entered the restraint room at 2:26 AM after using the rest room, dimmed the light on her phone, and placed foam earplugs in her ears to reduce her experience to sound/noise to approximately 33 decibels, which were the exact actions that Plaintiff was advised to take by her physician if she began experiencing the onset of a migraine. Plaintiff is

allowed a break of 1 hour and 30 minutes, although most staff take breaks on night shift in excess of two hours.

36.     At around 3:20 AM, Plaintiff was resting in silence in the restraint room, which has one bed, a steel door, and an observation window with a curtain, when a large man forcibly opened the door without warning.  The door, which is a heavily weighted steel door, hit the wall with such force that Plaintiff was momentarily stunned.  The male then fully entered the and stood over Plaintiff as she was laying on the bed.  Plaintiff was confused and terrified.

37.     In the dark, without her glasses, Plaintiff was unsure of who this male was and thought it might be a patient who had previously assaulted a nurse on her unit sending her to the hospital with injuries just hours before her shift began.

38.     Plaintiff eventually recognized the individual as Mr. Wilson, who shouted Plaintiff's name, "Kim!" at that time.

39.     In response, Plaintiff asked, "What?" Mr. Wilson then shouted at Plaintiff,  "This is unacceptable!" Plaintiff responded, "Reggie, you know I'm a diabetic. I've been sick. I came in here to lay down. I'm on my break!" Plaintiff then reached up to pull the earplug out of her right ear, at which point Mr. Wilson said in an elevated voice, "Oh, now you're wearing ear buds?!" Plaintiff responded, "Reggie, it's a foam ear plug from Walgreens," while holding up the foam ear plug to show him.  Mr. Wilson then turned to walk out of the room. At the time that Mr. Wilson entered the room, Plaintiff had been off the unit for less than an hour.

40.     As Mr. Wilson walked to exit the room, he then walked backwards and said to Plaintiff, "This aint cool. I'm going to have to report this!  This is going to be escalated to everybody!"  Shocked, Plaintiff did not respond.

41.     Mr. Wilson was insistent that he receive statements concerning the incident from

Plaintiff's coworkers immediately. To the best of Plaintiff's knowledge, Mr. Wilson did not solicit statements from alleged witnesses following the other "pop in" events involving other non-disabled, non-White similarly situated coworkers.

42.     In the morning, prior to the end of Plaintiff's shift, an incoming staff member presented Plaintiff with a written HR policy stating that employees who "sleep on the job" would receive a 15-day suspension without pay following an initial occurrence, while a subsequent occurrence would result in termination. This staff member informed Plaintiff that "[Mr. Wilson] wants you to post this on the wall."

43.     When Plaintiff returned to work for her scheduled night shift on April 14th, a co-worker shared with her a copy of Mr. Wilson's emailed initial report concerning his "pop in," which had been sent internally to administrative staff. This co-worker did not disclose to Plaintiff how he obtained a copy of the email, but Plaintiff was able to see that Mr. Wilson cited specific instances of other individuals (non-White, non-disabled) by name who were found to be sleeping on the job, although none were disciplined. This coworker, who was somehow aware of what had happened between Plaintiff and Mr. Wilson the night before, stated "Reggie is coming back. He will do this again. And next time, he said he's going to bring his own witness."

44.     Plaintiff was later notified by her manager, Marilyn Methavitchit, that Mr. Wilson had submitted two statements regarding the incident, which were contradictory in nature. Additionally, two coworkers who worked with Plaintiff on April 13, 2025, also submitted contradictory statements after being prompted by Reggie to amend their initial statements. There were a total of 6 statements submitted by 3 people, and none were consistent.

45.     Additionally, another coworker contacted Plaintiff to report that Mr. Wilson had been overheard prompting Sharlese Harris to amend her statement and coached her to do so. This

same coworker later witnessed Sharlene Harris laughing with nursing coordinator Rosalind O regarding these statements, informing Rosalind that she did change her statement for him.

46. Upon reading the numerous contradictory statements submitted by Mr. Wilson, Maria Sumitra, and Sharlene Harris, Plaintiff's manager, Ms. Methavitchit, emailed a response to administration wherein she declined Reggie Wilson's recommendation to issue Plaintiff a 15-day unpaid suspension because the reports were inconsistent and could be interpreted as discriminatory.

47. Ms. Methavitchit later advised Plaintiff that her refusal to discipline her was found to be "unacceptable" to Mr. Wilson and the administration and demanded that Ms. Methavitchit issue Plaintiff discipline as had been "recommended" or she would be found to be "insubordinate."

48. When Ms. Methavitchit responded that she did not believe there was any need to discipline Plaintiff, she was advised that Mr. Wilson does believe that there is a need to discipline Plaintiff but he cannot write or sign the discipline because he was not Plaintiff's manager.

49. Ms. Methavitchit was ultimately provided with a blank disciplinary document, instructing her to sign it no later than 3:00pm that Friday, which she did eventually sign in order to avoid being charged with insubordination herself.

50. After Ms. Methavitchit signed the blank pre-disciplinary form, administrative staff then filled in the form, citing Plaintiff for "negligence, conduct unbecoming a state employee, and sleeping on the job," resulting in Plaintiff being put up for a 15-day unpaid suspension.

51. Incidentally, in Plaintiff's most recent employee evaluation, Ms. Methavitchit

9

assessed Plaintiff as "exceeding expectations" in all employment categories, inclusive of a positive narrative she wrote praising Plaintiff's work.

52. On or about April 24, 2025, Plaintiff was hospitalized due to complications relating to her diabetes and has been on medical leave since that time.

## COUNT I
## (ADA – DISABILITY DISCRIMINATION)

53. Plaintiff re-alleges paragraphs 1 through 52 and incorporates them as if fully set forth herein.

54. The ADA prohibits employers from discriminating against employees on account of a disability.

55. Plaintiff is a qualified individual with a disability in that she could perform the essential functions of her job with/without an accommodation.

56. By its conduct as alleged herein, Defendant discriminated against Plaintiff on the basis of her disability when it subjected her to a hostile work environment and issued her pre-discipline for a 15-day unpaid suspension.

57. As a result of Defendant's actions, Plaintiff has suffered lost wages, other economic losses, and emotional distress due to the loss of her employment.

58. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible disability discrimination.

59. Plaintiff demands to exercise her right to a jury trial of this matter.

## PRAYER FOR RELIEF AS TO COUNT I

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on Count I and:

a) Award Plaintiff equitable/injunctive as appropriate;

b)      Award Plaintiff the value of all actual damages to be proved at trial;

c)      Award Plaintiff compensatory damages to make her whole, including but not limited to lost wages and compensation for emotional distress;

d)      Award Plaintiff reinstatement, or front pay in the alternative;

e)      Award Plaintiff reasonable attorney's fees, costs and disbursements;

f)      Award Plaintiff any other relief this Court deems just and proper.

## COUNT II
### (TITLE VII – RACE DISCRIMINATION)

60.     Plaintiff re-alleges paragraphs 1 through 52 and incorporates them as if fully set forth herein.

61.     Section 1981 prohibits employers from discriminating against individuals in the making, performing, modifying, and termination of contracts, including at-will employment contracts.

62.     By virtue of Plaintiff's and Defendant's employment relationship, an at-will employment contract was made by and between Plaintiff and Defendant.

63.     By its conduct alleged herein, Defendant discriminated against Plaintiff on the basis of her race when it subjected her to a hostile work environment and issued her a pre-disciplinary 15-day unpaid suspension.

64.     As a result of Defendant's actions, Plaintiff has suffered lost wages, other economic losses, and emotional distress.

65.     Defendant's conduct toward Plaintiff illustrated a willful and/or reckless disregard of Plaintiff's right to be free from impermissible retaliation.

66.     Plaintiff demands to exercise her right to a jury trial of this matter.

## PRAYER FOR RELIEF AS TO COUNT II

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on Count II and that it:

a)      Award Plaintiff equitable/injunctive as appropriate;

b)      Award Plaintiff the value of all actual damages proven at trial;

c)      Award Plaintiff compensatory damages to make her whole, including but not limited damages for emotional distress;

d)      Award Plaintiff punitive damages;

e)      Award Plaintiff reasonable attorney's fees, costs and disbursements;

f)      Award Plaintiff any other relief this Court deems just and proper.


**KIMBERLEY RILEY**

By:**/s/ Michael T. Smith**
Michael T. Smith
Trial Attorney

Michael T. Smith (ARDC No. 6180407 IL)
LAW OFFICES OF MICHAEL T. SMITH & ASSOCIATES, P.C.
3030 Warrenville Road, Suite 450-42
Lisle, Illinois 60532
(847) 450-1103 | (847) 895-0626
Msmith39950@aol.com
Msmithlaw123@gmail.com

12

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLEY RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. **1:25-cv-08892** |
| | ) | |
| vs. | ) | |
| | ) | **JURY DEMAND** |
| ILLINOIS DEPARTMENT OF HUMAN | ) | |
| SERVICES d/b/a CHICAGO-READ MENTAL | ) | |
| HEALTH CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

# EXHIBIT A

13

# CHARGE OF DISCRIMINATION

## Form 5 (06/24)

This form is affected by the Privacy Act of 1974.
See attached Privacy Act Statement and other information before completing this form.

| CHARGE PRESENTED TO: | AGENCY CHARGE NO. |
|---|---|
| EEOC | 440-2025-06724 |
| Illinois Department Of Human Rights | |

Name *(indicate Mr., Ms., Mrs., Miss, Dr., Hon., Rev.)*: Kimberly Riley

Phone No.:        (773) 759-1851

Year of Birth:        1962

Mailing Address: 3435 North Osage Avenue

CHICAGO, IL 60634

Named below is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency that I believe discriminated against me or others.

Name: Chicago Read

No. Employees, Members: 501+ Employees

Phone No.:

Mailing Address: 4200 N Oak Park Ave

CHICAGO, IL 60634, UNITED STATES OF AMERICA

Name:

No. Employees, Members:

Phone No.:

Mailing Address:

DISCRIMINATION BASED ON:

Disability, Race

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 04/01/2025

Latest: 04/18/2025

Continuing Action

THE PARTICULARS ARE:

I began my employment with Respondent on or about February 10, 2014. My current position is a Registered Nurse. Respondent was aware of my disability. During my employment, I was subjected to harassment. I was subjected to different terms and conditions, including, but not limited to being subjected to different policy and disciplinary expectations, such as my co-workers be able to sleep on duty, while I was not able to lay down on my unpaid break while my Respondent were aware of my sickness. On or about April 15, 2025, I complained to the Respondent, and I was subjected to a pre-discipline meeting with the possibility of a 15-day suspension without pay for being accused of sleeping.

I believe that I was discriminated against because of my disability, in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

I believe that I was discriminated against because of my race, [White], in violation of Title VII of the Civil Rights Act of 1964, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct, and that I have read each page of this form.

Digitally Signed By: Kimberly Riley

04/21/2025

Charging Party Signature & Date

---

If a state or local Fair Employment Practices Agency (FEPA) requires notarization, you may need to sign the charge in the presence of a notary. If so, please do so here.

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and belief.

Notarized Signature of Charging Party

Subscribed and sworn to before me this date:

Signature of Notary_____

Printed Name _____

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLEY RILEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   1:25-cv-08892 |
| | ) | |
| vs. | ) | |
| | ) | JURY DEMAND |
| ILLINOIS DEPARTMENT OF HUMAN | ) | |
| SERVICES d/b/a CHICAGO-READ MENTAL | ) | |
| HEALTH CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

# EXHIBIT B

14



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/30/2025

**To:** Kimberly Riley
3435 North Osage Avenue
CHICAGO, IL 60634
Charge No: 440-2025-06724

EEOC Representative and email:     JOVAN GATHINGS
Investigator
jovan.gathings@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2025-06724.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
04/30/2025

Amrith Kaur Aakre
District Director